Juan P. Morillo (*pro hac vice* pending)
Gabriel F. Soledad
Daniel Pulecio-Boek
QUINN EMANUEL URQUHART &
SULLIVAN LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Facsimile:  (202) 538-8100
Email:  juanmorillo@quinnemanuel.com
Email:  gabrielsoledad@quinnemanuel.com
Email:  danielpulecioboek@quinnemanuel.com

Eric Winston (*pro hac vice* pending)          Scott C. Shelley
QUINN EMANUEL URQUHART &                       Samantha Gillespie (*pro hac vice* pending)
SULLIVAN, LLP                                  QUINN EMANUEL URQUHART &
865 South Figueroa Street, 10th Floor          SULLIVAN LLP
Los Angeles, California 90017                  51 Madison Avenue, 22nd Floor
Telephone:  (213) 443-3000                     New York, New York 10010
Facsimile:  (213) 443-3100                     Telephone:  (212) 849-7000
Email:  ericwinston@quinnemanuel.com           Facsimile:  (212) 849-7100
                                               Email:  scottshelley@quinnemanuel.com
                                               Email:  samanthagillespie@quinnemanuel.com

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>INTEGRADORA DE SERVICIOS PETROLEROS ORO NEGRO, S.A.P.I. DE C.V.<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 18-11095 |
| In re:<br><br>PERFORADORA ORO NEGRO, S. DE R.L. DE C.V.<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 18-11094 |

**EXPEDITED MOTION OF FOREIGN REPRESENTATIVE FOR (I) PROVISIONAL
RELIEF PURSUANT TO BANKRUPTCY CODE SECTIONS 1519(a) AND 362(a) AND
ADDITIONAL RELIEF PURSUANT TO BANKRUPTCY CODE SECTION 1521; AND
(II) LEAVE TO CONDUCT DISCOVERY PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(a), 1521(a)(4) AND
FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

Alonso Del Val-Echeverria ("Mr. Del Val" or "Petitioner"), in his capacity as

Foreign Representative (the "Foreign Representative") of both Integradora de Servicios

Petroleros Oro Negro, S.A.P.I. de C.V. ("Integradora Oro Negro") and Perforadora Oro Negro, S.

de R.L. de C.V. ("Perforadora Oro Negro" and, together with Integradora Oro Negro, the

"Debtors") files this expedited motion (the "Motion") for entry of an order, substantially in the

form of the order attached hereto as Exhibit A, (1) granting immediate provisional relief pursuant

to sections 1519(a) and 362(a) of title 11, United States Code (the "Bankruptcy Code") or, in the

event the *Concurso Mercantil* (as defined below) is recognized as a foreign nonmain proceeding

pursuant to Bankruptcy Code section 1502(5), continuing the provisional stay indefinitely

pursuant to sections 1521(a)(1) and 1521(a)(6) of the Bankruptcy Code; and (2) leave to conduct

discovery prior to recognition pursuant to sections 105(a) and 1521(a)(4) of the Bankruptcy

Code and Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"), authorizing

the Foreign Representative to obtain discovery from the parties identified in Schedule 1,

including (A) serving document subpoenas or requests for production of documents,

communications and things substantially in the form annexed to this Motion as Appendix 1 (the

"Requests for Production"); and (B) taking deposition testimony of representatives of each of the

parties identified in Schedule 1 who are most knowledgeable about the topics in the Requests for

Production.[1]

---

[1]    If this Court grants this Motion, the Foreign Representative will serve deposition notices or subpoenas, as
applicable (the "Deposition Notices"), after receiving and reviewing any documents produced in response to his

On April 20, 2018, the Foreign Representative filed in this Court verified petitions regarding Integradora Oro Negro (the "Integradora Verified Petition") and Perforadora Oro Negro (the "Perforadora Verified Petition" and, together with the Integradora Verified Petition, the "Verified Petitions") for entry of orders (1) recognizing the *Concurso Mercantil* (as defined in the Verified Petitions) as a foreign main proceeding pursuant to sections 1515 and 1517 of the Bankruptcy Code; (2) granting relief pursuant to Bankruptcy Code section 1520; (3) granting interim relief pursuant to Bankruptcy Code section 1519(a); and (4) granting further relief pursuant to Bankruptcy Code sections 105(a), 1507(a), 1509(b)(2)-(3), 1521(a) and 1525(a).[2] This Motion refers to Chapter 15 of the Bankruptcy Code (11 U.S.C. §§ 1501-1532) as "Chapter 15" and to the proceedings resulting from the Verified Petition as the "Chapter 15 Proceedings."

In support of this Motion, the Petitioner files simultaneously herein and incorporates by reference (1) the Declaration (with accompanying exhibits) that the Foreign Representative submitted in support of the Verified Petitions (the "Del Val Declaration" or "Del Val Decl."); and (2) the Declaration by Alfonso López-Melih ("Mr. López"), concerning Mexican restructuring and bankruptcy law (the "López Declaration" or "López Decl.").

## BACKGROUND

### *Introduction*

1.     The Foreign Representative commenced these Chapter 15 Proceedings for three principal reasons.  The first is to obtain this Court's recognition of the *Concurso Mercantil* as a foreign main proceeding.  Recognition will (a) stay legal actions against the Debtors and their

---

Requests for Production.  The Foreign Representative reserves the right to seek to conduct additional examinations of individuals based on review of the documents provided.

[2]     Capitalized terms used in this Motion and not otherwise defined herein shall have the meanings set forth in the Verified Petitions.  In addition, the facts set forth in the Verified Petitions are incorporated in this Motion by reference in their entirety.

assets, preserving the *status quo* so that creditors and other parties in interest cannot seize property or litigate outside of the *Concurso Mercantil*; (b) help ensure the enforceability and effectiveness in the United States of the *Concurso Mercantil*; and (c) provide critical assistance to the Foreign Representative in maximizing the value of assets in the *Concurso Mercantil*. The second reason is to ensure that no creditors can bypass the effect of the *Concurso Mercantil* by continuing to attempt to take over the Debtors' assets, in defiance of orders issued by the Mexican *Concurso* court. Finally, in connection with these Chapter 15 Proceedings, the Foreign Representative will seek documentary and testimonial discovery from the Debtors' only client, and their principal creditors, debtors and competitor, in order to investigate potential causes of action, including in the United States or under United States law, against them or other parties. As discussed below, the Debtors require the tools provided by the Bankruptcy Code and Chapter 15 to assist in the decision to commence any litigation.

2.     As discussed in detail in the Verified Petitions, Integradora Oro Negro is a Mexican holding company that, through its subsidiaries in México and Singapore (collectively, the "Subsidiaries"), owns and leases five offshore drilling platforms, commonly known as "jack-up rigs" (the "Jack-Up Rigs"). From 2013 to 2015, Perforadora Oro Negro, one of Integradora Oro Negro's Mexican subsidiaries, entered into five lease agreements with subsidiaries of Petróleos Mexicanos ("Pemex"), México's state-owned oil company, for Pemex to use the five Jack-Up Rigs to drill for and extract oil and gas in the Gulf of Mexico (the "Pemex Contracts"). The Pemex Contracts range from approximately three to five years and require Pemex to pay a daily rate to Perforadora Oro Negro.

3.     Perforadora Oro Negro does not own the Jack-Up Rigs. Rather, it leases them from five Singaporean special purpose vehicles (each vehicle owning one Jack-Up Rig) (the

"Singapore Rig Entities") that are wholly owned subsidiaries of Oro Negro Drilling Pte. Ltd. ("Oro Negro Drilling"), a Singaporean holding company that is wholly owned by Integradora Oro Negro. This Motion refers to the lease agreements between Perforadora Oro Negro and Oro Negro Drilling's special purpose vehicles as the "Bareboat Charters."

***Bondholders***

4.      In 2014, Integradora Oro Negro raised $900 million through international bond issuances. The trustee of the bond issuances is Nordic Trustee, ASA ("Nordic Trustee"), a Norwegian financial services firm. As trustee, Nordic Trustee is responsible for acting on behalf of the Bondholders.

5.      A group that alleges to own over 50% of these bonds (as it calls itself, the "Ad-Hoc Group") is comprised of United States and international investment funds. Notably, Ship Finance International Ltd. ("SFIL"), a Bermuda-based investment fund publicly traded on the New York Stock Exchange ("NYSE") and a leading member of the Ad-Hoc Group, is controlled by the same owners as Seadrill, Ltd. ("Seadrill"), one of Perforadora Oro Negro's main competitors.[3]

6.      Primarily, the bonds are secured by (a) a pledge of stock owned by Integradora Oro Negro in its wholly owned subsidiary Oro Negro Drilling (the "Oro Negro Drilling Share Charge") and five pledges of stock owned by Oro Negro Drilling in the Singapore Rig Entities (the "Singapore Rig Entities' Share Charges"); and (b) mortgages on the Jack-Up Rigs. Additionally, the agreement governing the bonds provided for the establishment of a Mexican trust (in Spanish, *fideicomiso*) that receives rent payments by Pemex to Perforadora Oro Negro for leasing the Jack-Up Rigs (the "Mexican Trust"). Pursuant to its "waterfall" structure, the

---

[3]      This Motion refers to the members of the Ad-Hoc Group and the rest of the bondholders as the "Bondholders."

Mexican Trust must distribute to Perforadora Oro Negro the funds it needs to pay ordinary business expenses, including operating the Jack-Up Rigs. The Mexican Trust's administrator (*i.e.*, the entity responsible for managing the trust funds, including paying the beneficiaries) is Deutsche Bank México, S.A. Institución de Banca Múltiple ("Deutsche México"). Deutsche México's 99% owner is Deutsche Bank Americas Holding, Corp. ("Deutsche U.S."), a Delaware-incorporated and New York-based subsidiary of Deutsche Bank AG ("Deutsche Bank"). On information and belief, Deutsche Bank employees based in New York control and direct Deutsche México's operations.

### *Pemex's Changes to the Pemex Contracts*

7.     Pemex's daily rate payments to Perforadora Oro Negro under the original terms of the Pemex Contracts made Integradora Oro Negro and its Subsidiaries a profitable enterprise, yielding annual revenues of approximately $280 million (and EBITDA of approximately $190 million).[4] However, in 2015 and 2016, Pemex drastically altered the terms of the Pemex Contracts (including by reducing by more than 25% the daily rates under three contracts and suspending the other two), slashing Integradora Oro Negro's revenues by more than half. In 2017, Pemex proposed new detrimental amendments to the Pemex Contracts, furthering the business's financial distress (the "2017 Proposed Pemex Amendments"). To force Integradora Oro Negro and Perforadora Oro Negro to submit to the 2017 Proposed Pemex Amendments, Pemex (a) threatened to unilaterally terminate the Pemex Contracts; and (b) refused to continue paying Perforadora Oro Negro the daily rates due under the Pemex Contracts, suffocating Integradora Oro Negro's and Perforadora Oro Negro's finances.

---

[4]     "EBITDA" means earnings before interest, taxes, depreciation and amortization.

8.      Pemex was Perforadora Oro Negro's only client and, in practice, Perforadora Oro Negro could not lease the Jack-Up Rigs to anyone else in México.  Knowing that termination of the Pemex Contracts would be catastrophic, and strapped for cash due to Pemex's refusal to pay for its services, Perforadora Oro Negro ultimately yielded to Pemex's demands.  Yet, even after Perforadora Oro Negro informed Pemex that it would submit to Pemex's new terms, Pemex failed to execute the amendments.

### *Commencement of the Concurso Mercantil*

9.      Fearing that Pemex was preparing to terminate the Pemex Contracts, and facing a challenging liquidity crisis, Integradora Oro Negro, Perforadora Oro Negro, Oro Negro Drilling and the Singapore Rig Entities initiated voluntary insolvency proceedings in México in September 2017 (*concurso mercantil* proceedings).  Analogous to a Chapter 11 under the Bankruptcy Code, the purpose of a *concurso mercantil* proceeding is to restructure an insolvent company's debts, allowing for payment of the company's creditors and for the company's survival and continued operations.

10.     At the inception of the *Concurso Mercantil*, the Mexican court responsible for the proceeding issued numerous injunctions to (a) enjoin Pemex from unilaterally terminating the Pemex Contracts, including ruling that such terminations would be null, void and unenforceable; (b) enjoin the Bondholders (through Nordic Trustee) from enforcing any security interest against property owned by Integradora Oro Negro, including taking over Integradora Oro Negro's shares in Oro Negro Drilling or foreclosing on the Jack-Up Rigs; and (c) order Deutsche México to disburse to Perforadora Oro Negro the funds necessary for Perforadora Oro Negro to pay for its ordinary business expenses, including maintaining the Jack-Up Rigs and paying salaries.

***Pemex's, the Ad-Hoc Group's and Deutsche México's Apparently Coordinated Post-Concurso Activities***

11.    In flagrant disregard of the Mexican court's injunctions, in October 2017, Pemex unilaterally terminated the Pemex Contracts.    The very same day that Pemex unilaterally terminated the Pemex Contracts (notably, before the termination of the Pemex Contracts was even public), the Bondholders (through Nordic Trustee and, on information and belief, at the direction of the Ad-Hoc Group) (a) exercised the Oro Negro Drilling Share Charge, taking over Integradora Oro Negro's shares in Oro Negro Drilling, including over approximately $8 million in bank accounts held by Oro Negro Drilling and the Singapore Rig Entities (the "Singapore Rig Entities' Accounts"); and (b) caused the Singapore Rig Entities to terminate the Bareboat Charters, demanding that Perforadora Oro Negro surrender the Jack-Up Rigs to the Bondholders.

12.    Later, in January 2018, the Bondholders obtained an *ex parte* injunction in Singapore (where Oro Negro Drilling is chartered) enjoining Integradora Oro Negro and its managers from acting on behalf of Oro Negro Drilling in the *Concurso Mercantil* and, last month, sued Perforadora Oro Negro in New York seeking to repossess the Jack-Up Rigs (the "New York Litigation").

13.    Further aggravating the financial distress of Integradora Oro Negro and Perforadora Oro Negro, Deutsche México disbursed $23 million in the Mexican Trust to the Bondholders (through Nordic Trustee) and has obstinately resisted releasing any funds to Perforadora Oro Negro, placing it on the verge of collapse.

14.    The collective and apparently closely coordinated actions of the Ad-Hoc Group (acting through Nordic Trustee), Pemex and Deutsche Bank have caused Integradora Oro Negro and its Subsidiaries to collapse.    Were these parties complying with the Mexican court's injunctions, Perforadora Oro Negro would still be a going concern, servicing Pemex under the

Pemex Contracts.    Instead, Integradora Oro Negro and its Subsidiaries no longer have any revenue, have been forced to terminate virtually all their employees, are unable to service their debt and will soon run out of cash to maintain the Jack-Up Rigs.

15.    The Foreign Representative believes that it is not coincidental that Pemex, the Ad-Hoc Group and Deutsche México acted in the manner described above, and that it may have been planned for months beforehand.  The Foreign Representative is investigating whether such activities give rise to valuable claims held by the Debtors.  Chapter 15 provides the Foreign Representative the tools to conduct such an investigation.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Recognition of foreign proceedings and other matters under Chapter 15 of the Bankruptcy Code are expressly designated as core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A), (O) and (P).  Venue is proper in the Court pursuant to 28 U.S.C. § 1410.

## RELIEF REQUESTED

17.    By this Motion, the Foreign Representative seeks entry of an order substantially in the form attached hereto as Exhibit A,  (a) applying, on a provisional basis pursuant to section 1519(a), section 362 of the Bankruptcy Code and prohibiting all persons and entities from (i) continuing any action or commencing any additional action, against or involving Integradora Oro Negro or Perforadora Oro Negro, or their assets or the proceeds thereof; (ii) enforcing any judicial, quasi-judicial, administrative or regulatory judgment, assessment or order or arbitration award against Integradora Oro Negro or Perforadora Oro Negro or their assets; (iii) commencing or continuing any action to create, perfect or enforce any lien, set-off or other claim against Integradora Oro Negro or Perforadora Oro Negro or against any of their property; or (iv)

managing or exercising control over Integradora Oro Negro's or Perforadora Oro Negro's assets, wherever located, including, without limitation, within the United States, except as expressly authorized by the Foreign Representative in writing; and (b) providing that the stay will continue indefinitely pursuant to section 1521(a)(1) if the *Concurso Mercantil* is recognized as foreign nonmain proceedings.

18.    Additionally, the Foreign Representative requests authority to immediately take discovery pursuant to Bankruptcy Code sections 1519 and 1521(a)(4) and Rule 2004, from the parties identified in Schedule 1, including (a) serving (whether by document request or by subpoena, as applicable) Requests for Production substantially in the form attached to this Motion as Appendix 1; and (b) taking deposition testimony of representatives of each of the parties identified in Schedule 1 who are most knowledgeable about the topics in the Requests for Production.

19.    The Rule 2004 discovery requested in this Motion will provide the Foreign Representative with information he needs to protect Integradora Oro Negro's and Perforadora Oro Negro's property and the interests of creditors, and to investigate, and where appropriate, to prosecute, potential claims against the Ad-Hoc Group, Deutsche Bank, Pemex and others.

20.    Equally important, the Foreign Representative respectfully requests that the Court grant him immediate authority to commence discovery.  Immediate authority to take discovery is appropriate as the Debtors have urgent need to learn facts relating to the conduct of Pemex, the Ad-Hoc Group and Deutsche México, and should not have to wait until the hearing on recognition to begin that process.  Such immediate discovery may provide assistance to the Debtors as they proceed in the *Concurso Mercantil*, as information obtained in the discovery may provide guidance to the Mexican *Concurso* Court to enforce the existing

injunctions. Further, Integradora Oro Negro and Perforadora Oro Negro are rapidly running out of cash. Del Val Decl. ¶ 84. Accordingly, in very short order, potentially viable claims and causes of action may be lost, as the Foreign Representative will not have access to funds to properly investigate, much less prosecute, any such claims and causes of action.

## ARGUMENT

### I.    STANDARD FOR RELIEF UNDER SECTION 1519

21.    Section 1519 of the Bankruptcy Code provides for granting provisional relief to foreign representatives pending a ruling on recognition of a petition. Section 1519 provides, in pertinent part:

> a) From the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is urgently needed to protect the assets of the debtor or the interests of the creditors, grant relief of a provisional nature, including—
>
> (1) staying execution against the debtor's assets;
>
> (2) entrusting the administration or realization of all or part of the debtor's assets located in the United States to the foreign representative or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and
>
> (3) any relief referred to in paragraph (3), (4), or (7) of section 1521(a).

11 U.S.C. § 1519.[5]

22.    Section 1519(e) provides that the "standards, procedures, and limitations applicable to an injunction shall apply to relief under this section." 11 U.S.C. § 1519(e). Accordingly, the following factors applicable to the issuance of an injunction apply to this

---

[5]    Section 1521(a)(6) provides that the Court may continue any relief granted pursuant to section 1519. *See* 11 U.S.C. § 1521(a)(6).

Motion's request for relief under section 1519: (a) a likelihood of success on the merits; (b) a likelihood that the movant will suffer irreparable injury if the injunction is not issued; (c) that the threatened injury to the movant outweighs any damage the injunction might cause the opponent; and (d) that the injunction will not disserve the public interest. *See JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015). The Foreign Representative contends that these four factors are easily met.

## II. THE FOREIGN REPRESENTATIVE SATISFIES THE ELEMENTS FOR INJUNCTIVE RELIEF

### A. Likelihood of Success on the Merits

23. There is no reason why this Court will not recognize the *Concurso Mercantil*. As set forth in the Verified Petitions, the *Concurso Mercantil* is clearly a "foreign proceeding" under Chapter 15, and the Debtors' center of main interests is clearly México. Accordingly, there is no serious question that the Foreign Representative is entitled to and will succeed in obtaining relief under sections 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

### B. Likelihood of Irreparable Injury If Injunction Not Granted

24. There is undoubtedly a substantial threat of irreparable harm to Integradora Oro Negro and Perforadora Oro Negro if injunctive relief under section 1519 is not granted. Specifically, absent injunctive relief, (a) the Bondholders will likely continue acting in violation of the *Concurso* Court's injunctions to take over the Jack-Up Rigs, including through the New York Litigation; (b) Pemex will continue acting in violation of the *Concurso* Court's injunctions, including by continuing to refuse Perforadora Oro Negro's services and to pay it the daily rates due under the Pemex Contracts; and (c) Deutsche México, which is owned by Deutsche U.S., a New York-headquartered subsidiary of Deutsche Bank, and controlled from New York, will continue acting in violation of the *Concurso* Court's injunctions. Consequently, without

-12-

injunctive relief under section 1519, Integradora Oro Negro and Perforadora Oro Negro and their assets will be without effective protection from unlawful and unwarranted actions by its creditors and other parties to the *Concurso Mercantil*.  Absent injunctive relief, the destiny of the Jack-Up Rigs may be determined by a lawless process, and the rigs lost forever.  Such actions would undoubtedly interfere with the orderly implementation of the *Concurso Mercantil* process.

25.    It is well-established that irreparable harm to a debtor's estate is present where local actions are not enjoined and can disrupt a foreign proceeding. *See, e.g.*, *In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) ("irreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and fair distribution of assets in a single, centralized forum") (quoting Collier on Bankruptcy ¶ 304.05, at 304-21 (15th ed. Rev. 2003)).  The Foreign Representative submits that the second prong of the injunctive relief standard is therefore satisfied under these circumstances.

## C.    Threatened Injury to Integradora Oro Negro Outweighs Any Damage to Third Parties

26.    The relief requested herein will benefit Integradora Oro Negro and Perforadora Oro Negro by ensuring an equitable and orderly implementation of the *Concurso Mercantil* process.  *See, e.g.*, *In re Crystallex Int'l Corp.*, No. 11-14074 (Bankr. D. Del. Dec. 28, 2011), ECF No. 20 (stating that failing to issue a restraining order against creditors in a Chapter 15 case could "undermine the foreign representative's efforts to achieve an equitable result for the benefit of all of the Foreign Debtor's creditors").  Leaving Integradora Oro Negro's and Perforadora Oro Negro's assets exposed to attack could lead to a piecemeal distribution of its assets and hinder its ability to conduct operations, a reality that outweighs any perceived harm to any other party.  Accordingly, the threatened injury to the Debtors that would result if relief is

not granted under section 1519 clearly outweighs any damage third parties would suffer as a result of such relief.

### D. Injunction Will Serve Public Interest

27.     The relief requested under section 1519 will not disserve the public interest; on the contrary, granting such relief is in the public interest as it will facilitate a cross-border reorganization that will provide a benefit to Integradora Oro Negro's creditors.  *See, e.g.*, *Cunard S.S. Co. Ltd. v. Salen Reefer Svcs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

## III.   THE FOREIGN REPRESENTATIVE NEEDS TO OBTAIN RULE 2004 DISCOVERY

### A.     Standard for Discovery

28.     Section 1521(a)(4) provides that the court may authorize the foreign representative in a Chapter 15 proceeding to obtain discovery "concerning the debtor's assets, affairs, rights, obligations or liabilities."  11 U.S.C. § 1521(a)(4).  "By its terms, this provision enables a Foreign Representative to take broad discovery concerning the property and affairs of a debtor."  *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012).  A foreign debtor's "property" includes potential causes of action.  *See id.* (citing *In re Kane*, 628 F.3d 631, 641 n.7 (3d Cir. 2010)); *iXL Enters., Inc. v. GE Capital Corp.*, 167 Fed. App'x 824, 827 n.2 (2d Cir. 2006) (holding that discovery to investigate potential causes of action by the debtor is allowed under section 1521(a)(4) because potential causes of action are "property interests" of the debtor).

-14-

29.    Section 1521(a)(4) authorizes, in effect, discovery under Rule 2004. Rule 2004 provides that a court may order documentary and testimonial discovery into "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." Fed. R. Bankr. P. 2004(b). "The scope of [] Rule 2004 [discovery] is very broad and can be in the nature of a fishing expedition." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing *Chereton v. United States*, 286 F.2d 409, 413 (6th Cir. 1961), *cert. denied*, 366 U.S. 924 (1961).[6]

30.    Section 1519 expressly authorizes obtaining discovery under section 1521(a)(4) prior to recognition. *See* 11 U.S.C. § 1519(a)(3).

### B.    Discovery Sought

31.    As set forth on Schedule 1, the Foreign Representative seeks to obtain documentary and testimonial discovery from Pemex, Integradora Oro Negro's and Perforadora Oro Negro's only client,[7] the Ad-Hoc Group, including its United States-based members and

---

[6]    *See also In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("[T]he investigation of potential claims on behalf of a debtor is not an improper use of Rule 2004 discovery.") (citing *In re Brierley*, 145 B.R. 151, 170 (Bankr. S.D.N.Y. 1992) ("[D]iscovery ought to be permitted to ascertain the existence of such property, which may consist of a claim or of something more tangible.") (citation omitted)); *In re Glitnir Banki HF.*, No. 08-14757, 2011 WL 3652764, at *5 n.5 (Bankr. S.D.N.Y. Aug. 19, 2011) (holding that a party may obtain Rule 2004 from a target even though it is likely that the party will eventually sue the target).

[7]    As set forth in the Verified Petitions, there is ongoing litigation between Perforadora Oro Negro and Pemex. Del Val Decl. ¶ 51. Specifically, on October 26, 2017, Perforadora Oro Negro sued Pemex in a Mexican federal court demanding payment of damages for purportedly terminating the Decus, Fortius, Laurus and Primus Contracts. Del Val Decl. ¶ 51. The case is pending. Del Val Decl. ¶ 51. Similarly, on November 7, 2017, Perforadora Oro Negro sued Pemex before the *Concurso* Court (in an ancillary proceeding within the *Concurso Mercantil*) demanding payment of damages for purportedly terminating the Impetus Contract. Del Val Decl. ¶ 51. The case is pending. Del Val Decl. ¶ 51.

The existence of these cases does not bar Perforadora Oro Negro from obtaining discovery from Pemex under either section 1521(a)(4) or Rule 2004 due to the "pending proceeding rule" because (a) the issues in those cases are limited to damages payments due to Pemex's purported termination of the Pemex Contracts and ***do not*** relate to whether Pemex colluded with the Bondholders or the Ad-Hoc Group or other parties, which is what the Foreign Representative is investigating here; (b) even if those cases related to the same issues that the Foreign Representative is investigating here, the "pending proceeding rule" does not apply to discovery under section 1521(a)(4); and (c) even if the "pending proceeding rule" did apply to 1521(a)(4), the existence of a related proceeding does not bar discovery when the party pursuing discovery is not seeking to circumvent U.S. civil

members with substantial business in the United States, and their United States-based financial advisor (*i.e.*, AMA Capital Partners LLC ("AMA"), a New York-based financial advisor), Deutsche México and its United States-based controlling parent, and SeaMex, Limited ("Seamex"), the Seadrill affiliate that leases jack-up rigs to Pemex.

32.    The Foreign Representative seeks discovery into the following nine discrete topics concerning Integradora Oro Negro's and Perforadora Oro Negro's assets, operations and liabilities: (a) the Pemex Contracts, including the 2017 Proposed Pemex Amendments, Pemex's attempted unilateral terminations of the Pemex Contracts and any valuations of the Pemex Contracts; (b) Oro Negro's Bonds, including Nordic Trustee's attempt to declare the Bonds in default and any valuations of the Bonds; (c) Oro Negro Drilling and the Singapore Rig Entities, including their Share Charges and any valuations of these entities; (d) the Bareboat Charters, including the terminations of the Bareboat Charters by the Singapore Rig Entities and any valuations of the Bareboat Charters; (e) the Jack-Up Rigs, including any valuations of them; (f) the Mexican Trust, including any payments by Deutsche México to the Bondholders, the Ad-Hoc Group or Nordic Trustee; (g) the Singapore Entities' Accounts, including any payments from these accounts to the Bondholders, the Ad-Hoc Group or Nordic Trustee; (h) any administrative or judicial proceedings related to or involving Integradora Oro Negro, Perforadora Oro Negro, and their assets and liabilities; and (i) the Seamex's contracts with Pemex (the "Seamex Contracts"). Importantly, the discovery that the Foreign Representative seeks is limited to

---

procedure or bankruptcy laws. *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 347 (Bankr. S.D.N.Y. 2012) (finding that the pending proceeding rule does not necessarily apply to section 1521); *In re Intl. Fibercom, Inc.*, 283 B.R. 290, 292–93 (Bankr. D. Ariz. 2002) (finding that the pending proceeding rule did not apply where Rule 2004 discovery related to issues different than those litigated in the related matter); *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 629 (Bankr. D. Del. 2016) (granting Rule 2004 discovery) ("[M]ultiple courts have held that the possible use of information obtained through a Rule 2004 examination in collateral litigation pending in a different forum is not sufficient reason to deny an examination if it is not sought for the purpose of circumventing the federal rules of civil or bankruptcy procedure.").

documents, communications and things created or modified during a narrow period—specifically, between and including March 1, 2017 (on or around the date when Pemex informed Perforadora Oro Negro of the 2017 Proposed Pemex Amendments) and the Foreign Representative's filing of the Verified Petitions (*i.e.*, a period of approximately one year).[8]

33.    Additionally, through discovery into the topics described above, the Foreign Representative is investigating potential causes of action, including in the United States or under United States laws, by Integradora Oro Negro and/or Perforadora Oro Negro against the Bondholders (including the Ad-Hoc Group), the applicable Deutsche Bank entity and Pemex relating or arising from their (a) violations of orders issued by the *Concurso* Court; and (b) efforts (concerted or not) to harm Integradora Oro Negro and its Subsidiaries, including Perforadora Oro Negro, by (i) taking over the Jack-Up Rigs; (ii) terminating the Pemex Contracts; and (iii) misappropriating funds in the Mexican Trust or in the Singapore Entities' Accounts. Del Val Decl. ¶83.

**B.    The Court Should Grant the Foreign Representative's Request to Commence Discovery Pursuant to Sections 1519(a)(3) and 1521(a)(4) and Rule 2004**

1.    Discovery Falls Within the Scope of Sections 1523(a)(3) and 1521(a)(4) and Rule 2004

34.    The Foreign Representative seeks discovery into the assets, affairs, rights and liabilities of the Debtors—specifically, into their (a) contracts (*e.g.*, the Pemex Contracts, the Bareboat Charters and the Mexican Trust); (b) subsidiaries (*e.g.*, Oro Negro Drilling and the

---

[8]    The Requests for Production obligate the parties on Schedule 1 to produce documents in the possession, custody or control of their agents.  There are at least three agents of the targets of the Requests for Production that are likely in control, custody or possession of responsive documents:  Nordic Trustee, which acts on behalf of the Bondholders, counsel representing Pemex, and counsel representing the Ad Hoc Group.  If upon receiving and reviewing the documents produced in response to the Requests for Production, there are any indications that the parties of Schedule 1 are withholding responsive documents and that such documents might be in possession of their agents and representatives, the Foreign Representative reserves his rights to move to compel production of evidence from the targets and to seek discovery directly from their agents and representatives.

Singapore Rig Entities); (c) assets (*e.g.*, the Jack-Up Rigs and funds in the Mexican Trust); (d) affairs (*e.g.*, proceedings involving the Debtors, as well as the Seamex Contracts through which Seamex competes with the Debtors); (e) rights (*e.g.*, under the Pemex Contracts, the Bareboat Charters, the Oro Negro Bonds and the Mexican Trust); and (f) liabilities (*e.g.*, under the Oro Negro Bonds). Additionally, the Foreign Representative is investigating potential causes of action by Integradora Oro Negro and/or Perforadora Oro Negro against the Bondholders (including the Ad-Hoc Group), Deutsche Bank (including Deutsche México and Deutsche U.S.) and Pemex and such potential causes of action constitute Integradora Oro Negro's and Perforadora Oro Negro's property.

35. Such requested documents clearly fall within the scope of Bankruptcy Code section 1521(a)(4) and Rule 2004. Accordingly, this Court should authorize the Foreign Representative to take the discovery that it seeks.

### 2. The Targets of Discovery Are Appropriate

36. Pursuant to Rule 2004, "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). "Any" entity includes entities (a) with knowledge about the debtor's properties, liabilities and financial affairs, *see In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (holding that "[t]hird parties having knowledge of the debtor's affairs, as well as a debtor itself, are subject to examination [under Rule 2004]"); or (b) that have any relationship with the debtor, *see In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation.").

37. Here, the Foreign Representative seeks discovery from Integradora Oro Negro's and Perforadora Oro Negro's only client, and their principal creditors, debtors and competitor, all

of which know of Integradora Oro Negro's and Perforadora Oro Negro's business or deal with them.  *See supra* Section III(B).

### C. The Court Should Order Discovery Prior to Recognition

38.    The Court should grant discovery under section 1521(a)(4) pursuant to section 1519(a)(3).

39.    Time is of the essence.  Waiting until the recognition hearing before even starting the discovery process will result in significant delay.  Granting authority to commence immediate discovery avoids this unnecessary delay.  Obtaining such discovery may provide assistance to the Debtors as they proceed in the *Concurso Mercantil*, as information obtained in the discovery may provide guidance to the Mexican *Concurso* Court to enforce the existing injunctions.  Furthermore, the Foreign Representative cannot wait until recognition to obtain the discovery that it seeks because Integradora Oro Negro and Perforadora Oro Negro are rapidly running out of cash.  Del Val Decl. ¶ 84.  If the Foreign Representative is not granted immediate authority to commence discovery potentially viable claims and causes of action may be lost, as the Foreign Representative will not have access to funds to properly investigate, much less prosecute the claims.

### NO PRIOR REQUEST

40.    No prior application for the relief requested in this Motion has been made to this or any other court.

### CONCLUSION

For the reasons set forth above, the Foreign Representative respectfully requests that this Court grant this Motion in its entirety and grant such other further relief as this Court deems appropriate.

Dated:  April 20, 2018
New York, New York

Respectfully submitted,

 /s/      Scott C. Shelley
Scott C. Shelley
Samantha Gillespie (*pro hac vice* pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile: (212) 849-7100

Juan P. Morillo (*pro hac vice* pending)
Gabriel F. Soledad
Daniel Pulecio-Boek
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone:  (202) 538-8000
Facsimile:  (202) 538-8100

Eric D. Winston (*pro hac vice* pending)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California  90017
Telephone:  (213) 443-3000
Facsimile: (212) 443-3100

*Attorneys for the Foreign Representative*

## <u>SCHEDULE 1</u>

1.      AMA Capital Partners, LLC

2.      Deutsche Bank Americas Holding, Corp.

3.      Deutsche Bank México, S.A.

4.      Petróleos Mexicanos

5.      Seamex, Ltd.

6.      The members of the Ad-Hoc Group:

      (a) Alterna Capital Partners, LLC;

      (b) Asia Research & Capital Management, Ltd;

      (c) CQS, LLP;

      (d) Maritime Finance Company, Ltd.; and

      (e) Ship Finance International, Ltd.