# APPENDIX 1

## DEFINITIONS

The following definitions are applicable to all Requests for Production:

1. "Ad-Hoc Group" means each of or collectively the following entities: (a) Alterna Capital Partners, LLC; (b) Asia Research & Capital Management, Ltd; (c) CQS, LLP; (d) Maritime Finance Company, Ltd.; and (e) Ship Finance International, Ltd., and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

2. "AMA" means AMA Capital Partners, LLC and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

3. "Bareboat Charters" means each of or collectively the following contracts: (a) the Decus Bareboat Charter; (b) the Fortius Bareboat Charter; (c) the Laurus Bareboat Charter; (d) the Primus Bareboat Charter; and (e) the Impetus Bareboat Charter.

4. "Bareboat Charter Terminations" means letters by each of the Singapore Rig Entities to Perforadora Oro Negro dated October 5, 2017 purporting to terminate the Bareboat Charters.

5. "Bondholders" means all holders of Oro Negro Bonds, including the Ad-Hoc Group, and each and all of their current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

6. "Communication," pursuant to Local Bankruptcy Rule 7026-1 and Local Civil Rule 26.3(c)(1), means the transmission of information of any kind, in any form and by any means, including, but not limited to, statements, admissions, denials, inquiries, discussions, conversations, negotiations, agreements, contracts, notes (handwritten, typed or otherwise), summaries, memoranda, reports, submissions or filings to any government agency or entity, understandings, meetings or any other direct or indirect disclosure in any form, including, but not limited to audio, video, digital, electronic, oral or paper form, and any draft communication in such form, whether or not the communication was ever disclosed, sent or transmitted.

7. "Concerning," pursuant to Local Bankruptcy Rule 7026-1 and Local Civil Rule 26.3(c)(7), means to any extent, relating to, referring to, describing, evidencing or constituting. Each grammatical variant of "Concerning" shall have a corresponding meaning appropriate to it.

8. "*Concurso Mercantil*" means the joint voluntary insolvency proceedings initiated by Perforadora Oro Negro and Integradora Oro Negro in México, as described in the Perforadora Verified Petition and in the Integradora Verified Petition.

9. "Counsel" means any attorney acting or purporting to act on Your behalf.

10. "Document," pursuant to Local Bankruptcy Rule 7026-1 and Local Civil Rule 26.3(c)(2), means any writings, drawings, graphs, charts, photographs, sound recordings, images,

and other data or data compilations stored in any medium, including electronically, from which information can be obtained, including, without limitation, written, typed, printed, electronic, graphic or otherwise recorded material of any kind, however produced or reproduced, whether different because of notes made thereon or otherwise, including, but not limited to, any advertisement, agreement, analysis, book, brochure, calendar, chart, check (front and back) or check stub, checklist, contract, cost sheet, database information, diary, electronic file, email, facsimile, filing, financial report, graph, guideline, handbook, index, instant message, invoice, ledger, letter or other correspondence, license, log, memorandum, microfilm, minutes, motion picture film, notebook, notes (handwritten, typed or otherwise), opinion, pamphlet, paper, picture, photograph, plan, policy, procedure, press release, purchase order, receipt, recording, report, statement, study, submission, summary, tabulation, talking points, tape recording, task list, telegram, telephone call record, text message, thing, timesheet, transcript of a telephone conversation, transcript of testimony, travel record, video, voice message or recording, work paper, data compilation, including, but not limited to computer data stored on a USB drive, external hard drive, compact disc, computer disk or other memory unit containing such data from which information can be obtained or translated into usable form, translations or summaries of foreign language documents and all similar recorded material.  Each draft or non-identical document is a distinct Document, whether or not any form of the Document in question was or is ever disclosed, sent or transmitted.  A Document further includes any and all of its amendments, whether contemplated or executed, including the Document and its amendments' enclosures, exhibits, annexes, appendices, schedules or other attachments, whether by staple, clip, rubber band, binding or other means, and all appended or embedded links or files.

11. "Decus" means a Baker Marine Pacific Class 400 jack-up rig identified with IMO no. 9680982.

12. "Decus Bareboat Charter" means the bareboat charter dated April 1, 2014 between Perforadora Oro Negro and Oro Negro Decus regarding Decus.

13. "Decus-Pemex Contract" means the contract dated January 27, 2014 between Perforadora Oro Negro and Pemex regarding Decus.

14. "Declaration of Default" means Nordic Trustee's letter to Oro Negro Drilling dated September 25, 2017 purporting to declare the Oro Negro Bonds in default.

15. "Deutsche Bank" means Deutsche Bank, AG and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing, including but not limited to Deutsche Bank México, S.A. and Deutsche Bank Americas Holding, Corp.

16. "Fortius" means a Baker Marine Pacific Class 400 jack-up rig identified with IMO no. 9680970.

17. "Fortius Bareboat Charter" means the bareboat charter dated December 5, 2013 between Perforadora Oro Negro and Oro Negro Fortius regarding Fortius.

18. "Fortius-Pemex Contract" means the contract dated January 13, 2014 between Perforadora Oro Negro and Pemex regarding Fortius.

19. "Impetus" means a Baker Marine Pacific Class 400 jack-up rig identified with IMO no. 9689718.

20. "Impetus Bareboat Charter" means the bareboat charter dated December 15, 2015 between Perforadora Oro Negro and Oro Negro Impetus regarding Impetus.

21. "Impetus-Pemex Contract" means the contract dated December 18, 2015 between Perforadora Oro Negro and Pemex regarding Impetus.

22. "Integradora Oro Negro" means Integradora de Servicios Petroleros Oro Negro, S.A.P.I. de C.V. and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

23. "Integradora Verified Petition" means the petition of Integradora Oro Negro as filed on April 20, 2018.

24. "Jack-Up Rigs" means each of or collectively the following jack-up rigs: (a) Decus; (b) Fortius; (c) Impetus; (d) Laurus; and (e) Primus.

25. "Laurus" means a KFELS Mod V-B jack-up rig identified with IMO no. 9623893.

26. "Laurus Bareboat Charter" means the bareboat charter dated May 8, 2013 between Perforadora Oro Negro and Oro Negro Laurus regarding Laurus.

27. "Laurus-Pemex Contract" means the contract dated April 23, 2013 between Perforadora Oro Negro and Pemex regarding Laurus.

28. "Mexican Trust" means the trust established by Perforadora Oro Negro and others in June 2013, identified as No. F/1695.

29. "New York Litigation" means the proceeding initiated by the Singapore Rig Entities in the United States District Court for the Southern District of New York against Perforadora Oro Negro, identified as Case No. 1:18-cv-02301.

30. "Nordic Trustee" means Nordic Trustee ASA and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

31. "Oro Negro Bonds" means bonds issued by Oro Negro Drilling and/or Oro Negro Impetus pursuant to bond agreements identified with numbers ISIN No. 001070098.2 and ISIN No. 0010724818.

32. "Oro Negro Decus" means Oro Negro Decus Pte. Ltd. and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

33. "Oro Negro Decus Share Charge" means the share charge between Oro Negro Drilling and Nordic Trustee dated January 29, 2014 regarding Oro Negro Drilling's shares in Oro Negro Decus.

34. "Oro Negro Drilling" means Oro Negro Drilling Pte. Ltd. and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited

6

partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

35. "Oro Negro Drilling Share Charge" means the share charge between Integradora Oro Negro and Nordic Trustee dated January 29, 2014 regarding Integradora Oro Negro's shares in Oro Negro Drilling.

36. "Oro Negro Fortius" means Oro Negro Fortius Pte. Ltd. and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

37. "Oro Negro Fortius Share Charge" means the share charge between Oro Negro Drilling and Nordic Trustee dated January 29, 2014 regarding Oro Negro Drilling's shares in Oro Negro Fortius.

38. "Oro Negro Impetus" means Oro Negro Impetus Pte. Ltd. and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

39. "Oro Negro Impetus Share Charge" means the share charge between Oro Negro Drilling and Nordic Trustee dated January 29, 2014 regarding Oro Negro Drilling's shares in Oro Negro Impetus.

40. "Oro Negro Laurus" means Oro Negro Laurus Pte. Ltd. and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

41. "Oro Negro Laurus Share Charge" means the share charge between Oro Negro Drilling and Nordic Trustee dated January 29, 2014 regarding Oro Negro Drilling's shares in Oro Negro Laurus.

42. "Oro Negro Primus" means Oro Negro Primus Pte. Ltd. and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

43. "Oro Negro Primus Share Charge" means the share charge between Oro Negro Drilling and Nordic Trustee dated January 29, 2014 regarding Oro Negro Drilling's shares in Oro Negro Primus.

44. "Pemex" means Petróleos Mexicanos and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees,

managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing, including, but not limited to, Pemex Perforación y Servicios and Pemex Exploración y Producción.

45. "Pemex Contracts" means each of or collectively the following contracts: (a) the Decus-Pemex Contract; (b) the Fortius-Pemex Contract; (c) the Laurus-Pemex Contract; (d) the Primus-Pemex Contract; and (e) the Impetus-Pemex Contract.

46. "Pemex Terminations" means Pemex's letters to Perforadora Oro Negro dated October 2, 2017 purporting to terminate the Pemex Contracts.

47. "Perforadora Oro Negro" means Perforadora Oro Negro S. de R.L. de C.V. and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

48. "Perforadora Verified Petition" means the petition of Perforadora Oro Negro as filed on April 20, 2018.

49. "Person," pursuant to Local Bankruptcy Rule 7026-1 and Local Civil Rule 26.3(c)(6), means any natural person or any legal entity, including, without limitation, any individual, corporation, business, trust, estate, partnership, limited liability company, governmental entity, association, joint venture, public corporation, group, organization or any other legal or commercial entity, including each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers,

9

directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing, including, but not limited to, persons residing, conducting business, established or incorporated in México, Norway, Singapore or the United States.

50. "Primus" means a KFELS Mod V-B jack-up rig identified with IMO no. 8771277.

51. "Primus Bareboat Charter" means the bareboat charter dated January 7, 2013 between Perforadora Oro Negro and Oro Negro Primus regarding Primus.

52. "Primus-Pemex Contract" means the contract dated April 23, 2013 between Perforadora Oro Negro and Pemex regarding Primus.

53. "Proceeding" means any application, claim, complaint, petition or request of any kind to or before any Public Entity, including, but not limited to, the New York Litigation, the *Concurso Mercantil* and the Singapore Proceeding.

54. "2017 Proposed Pemex Amendments" means Pemex's proposed amendments Concerning the Pemex Contracts in or around March 2017 and thereafter.

55. "Public Entity" means any government or governmental subdivision, agency or instrumentality and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

56. "Seadrill" means Seadrill, Ltd. and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers,

officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

57. "Seamex" means SeaMex, Limited and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing, including, but not limited to, Sea Dragon de México, S. de R.L. de C.V., Seadrill Titania de México, S. de R.L. de C.V., Seadrill Defender de México, S. de R.L. de C.V., Seadrill Oberon de México, S. de R.L. de C.V., Seadrill Courageous de México, S. de R.L. de C.V. and Seadrill Intrepid de México, S. de R.L. de C.V.

58. "Seamex Contracts" means each of and collectively the following contracts between Seamex and Pemex: (a) the contract dated February 10, 2014 identified with number 421004807; (b) the contract dated February 10, 2014 identified with number 421004812; (c) the contract dated February 10, 2014 identified with number 421004814; (d) the contract dated February 10, 2014 identified with number 421004815; and (e) the contract dated November 14, 2014 identified with number 421004897.

59. "Singapore Proceeding" means the proceeding initiated in Singapore by Oro Negro Drilling and the Singapore Rig Entities against Integradora Oro Negro and two of its managers, identified as Case No. HC/OS 126/2018.

60. "Singapore Rig Entities" means each of or collectively the following entities: (a) Oro Negro Decus; (b) Oro Negro Fortius; (c) Oro Negro Laurus; (d) Oro Negro Primus; and (e) Oro Negro Impetus.

61. "Singapore Entities' Accounts" means any bank accounts held by Oro Negro Drilling or any of the Singapore Rig Entities.

62. "Singapore Rig Entities' Share Charges" means each of or collectively the following contracts: (a) the Oro Negro Decus Share Charge; (b) the Oro Negro Fortius Share Charge; (c) the Oro Negro Impetus Share Charge; (d) the Oro Negro Laurus Share Charge; and (e) the Oro Negro Primus Share Charge.

63. "Valuation" means any analysis, assessment, study or report of the value or worth of an asset, claim or right, including, but not limited to, the Jack-Up Rigs and the Pemex Contracts.

64. "Thing" means any tangible object, other than a document.

65. "You" or "Your" means each of the entities listed in Schedule 1 and each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

66. The terms "all," "any" and "each" shall be construed broadly and mean all, any and each as necessary so as to bring within the scope of a Request for Production all responses that otherwise could be construed to be outside of its scope.

67. The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary so as to bring within the scope of a Request for Production all responses that might otherwise be construed to be outside of its scope.

68. The use of the singular of any word includes the plural and vice versa as necessary so as to bring within the scope of a Request for Production all responses that might otherwise be construed to be outside of its scope.

69. The use of the past tense includes the present tense unless otherwise explicitly delimited.

## INSTRUCTIONS

1. Each reference to a corporation, partnership, limited liability company, unincorporated association, government agency or other fictitious person includes each and all of its current and former parents, owners, subsidiaries, affiliates, divisions, predecessors, successors, employees, managers, officers, directors, shareholders, partners, general partners, limited partners, members, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

2. Each reference to a natural person includes that person's relatives, employees, partners, agents, representatives, attorneys, accountants, consultants, independent contractors or any other Person or entity acting, or purporting to act, with or on behalf of any of the foregoing.

3. Each reference to a Proceeding, including, but not limited to, the New York Litigation, the *Concurso Mercantil* and the Singapore Proceeding, includes any and all filings and orders by any Person Concerning that Proceeding, including appeals, requests or petitions that are ancillary, supplementary or collateral to that Proceeding.

4. Unless otherwise indicated, the Documents, Communications and Things requested include all Documents, Communications and Things in Your possession, custody or control. Without limiting the meaning of the terms "possession, custody or control" as used in the preceding sentence, a document is in Your possession, custody or control if You have actual possession or custody of the document, or the right to obtain the document or a copy thereof upon demand from one or more of Your representatives, agents, consultants, independent contractors, attorneys, accountants or any other person or public or private entity that has actual physical possession.

5. These Requests for Production call for the production of original Documents and Communications. In addition, the Requests for Production call for the separate production of all copies and, to the extent applicable, preliminary drafts of Documents or Communications that differ in any respect from the original or final draft or each other (*e.g.*, by reason of differences in form or content or by reason of handwritten notes or comments having been added to one copy of a Document or Communication but not to the original or other copies thereof).

6. If You object to any Request for Production, You must state in writing, with specificity, the grounds for objection. If You object to a particular portion of any Request for Production, You shall respond to any other portion of such Request as to which there is no objection and state in writing, with specificity, the grounds of the objection to the particular portion of the Request.

7. If You withhold any Document, Communication or part thereof that is responsive to any Request for Production on the grounds of attorney-client privilege, the attorney work product doctrine or any other privilege, doctrine or basis, You must state in writing: (1) the date of the Document or Communication; (2) the type of Document or Communication; (3) the

subject matter of the Document or Communication; (4) the author of the Document or Communication, the addressees of the Document or Communication, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other, and the positions of all the foregoing; (5) the title of the Document or Communication; (6) the name of the Person or Persons who prepared or signed the Document or engaged in the Communication; and (7) the particular privilege, doctrine or other basis for withholding the Document or Communication, and, if the privilege is governed by state law, the state's privilege rule that You invoke. If You fail to set forth a sufficient factual basis for the assertion of any claim of privilege or protection, then any arguable claim of privilege or protection shall be waived. Compliance with the above instructions is not to be construed as an admission by Debtors that such privilege or protection is valid, and Debtors reserve the right to challenge any purported claim of privilege or protection.

8. You shall produce Documents, Communications and Things on a rolling basis as they become available.

9. Selection of Documents, Communications and Things from files and other sources, and the number of such Documents, Communications and Things, shall be performed in such a manner as to ensure that the source of each Document, Communication or Thing may be determined, if necessary.

10. File folders with tabs or labels, or directories of files identifying Documents, Communications and Things, must be produced intact with such Documents, Communications and Things.

11. You must produce entire Documents and Communications, including attachments, enclosures, exhibits, cover letters, memoranda, annexes, schedules and appendices. Documents

or Communications not otherwise responsive to a Request for Production are to be produced if such Documents or Communications are attached to, or enclosed with, any Document or Communication that is responsive. Examples of such Documents or Communications include email attachments, attachments to letters or agreements, routing slips, transmittal memoranda or letters, evaluations or similar Documents or Communications. In the case of email attachments, if either the email or any of its attachments is responsive, You must produce the email and all of the corresponding attachments.

12. A Document with handwritten, typed or other recorded notes, editing marks or other revisions is not and shall not be deemed by You to be identical to one without such modifications, additions or deletions. The term "original" includes the file copy or copies of any document if there is no actual original.

13. All Documents and Communications produced should be Bates numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the Document or Communication.

14. These Requests for Production specifically contemplate the production of all electronic or magnetic data. To the extent any of the Documents, Communications or Things produced in response to these Requests for Production exist in electronic or magnetic form, such Documents, Communications or Things shall be produced in native format, with all metadata preserved and intact, unless the parties reach a mutual agreement regarding the standards for any other type of electronic production.

15. Each Request for Production is for all Documents, Communications and Things created or modified between and including March 1, 2017 and the filing date of the Integradora Verified Petition and the Perforadora Verified Petition.

16. Each Request for Production should be construed independently. No Request for Production should be construed to reference any other Request for the purpose of limiting the scope of response to such Request for Production.

17. If You cannot respond fully to a Request for Production after exercising due diligence to secure the information requested, or do not have information responsive to any part of a Request for Production, You must so state, describe in full Your efforts to obtain the information requested and respond to the Request for Production to the fullest extent possible. If a qualified response to a Request for Production must be given, You shall respond to the Request for Production as directly and fully as possible and state fully the reason that such qualification is necessary.

18. If Your response to a particular Request for Production is a statement that You lack the ability to comply with that Request for Production, You must specify whether the inability to comply is because the particular item or category of information never existed or has been lost, destroyed, discarded, misplaced, stolen or otherwise disposed of, or because it has never been or is no longer in Your possession, custody or control, in which case the name and address of any Person known or believed by You to have possession, custody or control of that information or category of information must be identified.

19. If any information (*e.g.*, authorship, source, existence) Concerning Documents, Communications or Things responsive to a Request for Production is not known, then that lack of knowledge must be specifically indicated in the response. If any information requested is not in Your possession but is known or believed to be in the possession of another Person, then identify that Person and state the basis of belief or knowledge that the requested information is in such Person's possession.

20. These Requests for Production are continuing in nature, so as to require further and supplemental responses if You obtain or discover additional Documents, Communications or Things between the time of initial production and the time of the trial. Such supplemental Documents must be produced promptly upon discovery. Debtors specifically reserve the right to make additional Requests for Production, seek supplementary responses and the additional supplementary production of Documents, Communications or Things. All responses to these Requests for Production shall comply fully in all respects with the requirements of the Federal Rules of Civil Procedure, the Southern District of New York Local Civil Rules, the Local Bankruptcy Rules and all other applicable rules.

\*       \*       \*

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:

All Documents, Communications and Things Concerning the Pemex Contracts, including, but not limited to:

      a.  the Pemex Terminations;

      b.  the 2017 Proposed Pemex Amendments; and

      c.  Valuations of the Pemex Contracts.

REQUEST FOR PRODUCTION NO. 2:

All Documents, Communications and Things Concerning the Oro Negro Bonds, including, but not limited to:

      a.  the Declaration of Default; and

      b.  Valuations of the Oro Negro Bonds.

REQUEST FOR PRODUCTION NO. 3:

All Documents, Communications and Things Concerning Oro Negro Drilling and the Singapore Rig Entities, including, but not limited to:

      a.  the Oro Negro Drilling Share Charge;

      b.  the Singapore Rig Entities' Share Charges; and

      c.  Valuations of Oro Negro Drilling or of the Singapore Rig Entities.

REQUEST FOR PRODUCTION NO. 4:

All Documents, Communications and Things Concerning the Bareboat Charters, including, but not limited to:

      a.  the Bareboat Charter Terminations; and

      b.  Valuations of the Bareboat Charters.

REQUEST FOR PRODUCTION NO. 5:

All Documents, Communications and Things Concerning the Jack-Up Rigs, including, but not limited to Valuations of the Jack-Up Rigs.

REQUEST FOR PRODUCTION NO. 6:

All Documents, Communications and Things Concerning the Mexican Trust, including, but not limited to, any payments to Nordic Trustee, the Ad-Hoc Group, the Bondholders or any Person with funds in the Mexican Trust and use of any such payments by Nordic Trustee, the Ad-Hoc Group, the Bondholders or any Person.

REQUEST FOR PRODUCTION NO. 7:

All Documents, Communications and Things Concerning the Singapore Entities' Accounts including, but not limited to, any payments to Nordic Trustee, the Ad-Hoc Group, the Bondholders or any Person with funds in the Singapore Entities' Accounts and use of any such payments by Nordic Trustee, the Ad-Hoc Group, the Bondholders or any Person.

REQUEST FOR PRODUCTION NO. 8:

All Documents, Communications and Things Concerning the New York Litigation, the *Concurso Mercantil*, the Singapore Proceeding or any other Proceeding Concerning Integradora Oro Negro, Perforadora Oro Negro, the Oro Negro Bonds, Oro Negro Drilling, the Singapore Rig Entities, the Jack-Up Rigs or the Mexican Trust.

REQUEST FOR PRODUCTION NO. 9:

All Documents, Communications and Things Concerning the Seamex Contracts.